UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LORENE EDWARDS, on behalf of and for BRYAN ERIC EDWARDS, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 6: 18-076-DCR |
| V. | ) ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Lorene Edwards, on behalf of Bryan Edwards ("Edwards"), and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 13, 15] Edwards contends that the administrative law judge assigned to the case ("ALJ") erred in denying the application for Disability Insurance Benefits ("DIB") because some of the Claimant's ailments were not found to be "severe." [Record No. 13, p. 1] Edwards further argues that the ALJ erroneously found that the Claimant could perform medium work and that he did not properly weigh the medical evidence. *Id*. at 1-2. She requests that DIB be paid or, alternatively, that the matter be remanded for a new administrative hearing. *Id*. at 2. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 15]

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Edwards.

## I. PROCEDURAL HISTORY

Bryan Edwards filed an application for DIB on November 3, 2015, pursuant to Title II of the Social Security Act ("Act"). [Administrative Transcript, "Tr." 170-71] He claimed a disability onset date of September 22, 2015. [Tr. 170] The Social Security Administration ("SSA") denied this application initially and upon reconsideration. [Tr. 65-92] Edwards then requested a hearing before an ALJ. [Tr. 106-07] However, Edwards passed away before the hearing, so his wife was substituted as a party. [Tr. 125] ALJ Johnathan Leiner issued a written opinion following the administrative hearing, finding that Edwards had not been disabled between his alleged onset date and his death. [Tr. 22-31] The Appeals Council subsequently denied Plaintiff's request for review. [Tr. 1] Edwards, therefore, has exhausted her administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. STATEMENT OF FACTS

Bryan Edwards was 47 years old at the time of his death. [Tr. 170] He had a high school education and had worked as a cabinet assembler at American Woodmark for 13 years. [Tr. 53, 59] Edwards was fired from his job in November 2015 for missing too much work. [Record No. 13-1, p. 4]

Edwards was diagnosed prior to his alleged onset disability date with Barrett's esophagus and gastroesophageal reflux disease ("GERD"). [Tr. 289] He was treated in late September 2015 with an ablation procedure for Barrett's esophagus. [Tr. 293] Edwards saw Shawna Sexton, D.O., and complained of joint pain in October and November of 2015. [Tr. 310-315]

Edwards was admitted to an emergency room in January 2016 with abdominal pain. [Tr. 317] A CT scan of his abdomen and pelvis showed inflammation of the pancreatic head. [Tr. 325] Edwards was diagnosed with acute pancreatitis. [Tr. 317-326] He saw Stephanie Southard, D.O., in February 2016, and complained of sinusitis, as well as aches and pains. [Tr. 338] However, Edwards did not complain of stomach pain at that time. [Tr. 338] Dr. Southard observed normal respiratory effort and Edwards' abdomen appeared normal on palpation. [Tr. 339] Dr. Southard diagnosed sinusitis and fibromyalgia. [Tr. 339]

Edwards returned to Dr. Southard in June 2016, complaining of constant shaking. [Tr. 441] His abdomen appeared non-tender to palpation. [Tr. 443] Following hospitalization for pancreatitis, Edwards followed-up with Dr. Southard in July 2016. He denied abdominal pain and did not present any abnormal abdominal findings. [Tr. 444-46] Edwards again followed up with Dr. Southard in August 2016. At that time, he complained of pain and requested medication. [Tr. 447] Edwards claimed to have tenderness in his spine and legs (but not his abdomen). [Tr. 449]

Edwards saw Sherrell Roberts, M.D., in September 2016. He complained of insomnia, fatigue, and hypertension during this visit. [Tr. 344] Dr. Roberts noted Edwards' abdomen and spine were not tender. [Tr. 344] He was referred to a fibromyalgia specialist. [Tr. 347] Edwards returned to Dr. Roberts in October 2016 for tachycardia, myalgia, and depression. [Tr. 342] His abdomen was soft and not tender. [Tr. 342]

Edwards was hospitalized on December 11, 2016, for a recurrence of acute pancreatitis. [Tr. 383-90] A CT scan indicated he was suffering from "mild" early pancreatitis, while a chest x-ray evidenced that his chest was completely clear, and he was "no more hypoxic than he had previously been." [Tr. 392] He was "awake and alert" the next day before going to

sleep at 5:00 p.m. [Tr. 392] His wife called for help approximately 30 minutes later and he was found to be without a pulse. [Tr. 392]

The plaintiff passed away on December 13, 2016. [Tr. 392-93] His primary cause of death was acute hypoxic and hypocarbic event. [Tr. 391] Secondary contributing causes were acute pancreatitis, obesity, and obstructive sleep apnea. [Tr. 391] Samuel Weigel, M.D., explained that Edwards had likely aspirated while sleeping. [Tr. 393] Weigel also noted that "he could not imagine [Edwards] developed [acute respiratory distress syndrome] given his clear chest scan 12 hours prior and his normal oxygen Saturday 45 minutes [before his death]." [Tr. 393] The ALJ concluded Edwards' death was from "immediate short-term events rather than from any durational, hence any 'severe' impairments." [Tr. 28]

Edwards met with Edd Easton-Hogg, Psy. D, prior to his death. [Tr. 328-332] Dr. Hogg performed a psychological consultative examination on February 12, 2016, indicating that Edwards suffered from panic disorder, agoraphobia, and unspecified depressive disorder. [Tr. 331] Edwards had a GAF score of 55 according to Dr. Hogg. [Tr. 331] Dr. Hogg found that:

1. The claimant's capacity to understand, remember, and carry out instructions towards the performance of simple repetitive tasks appears affected by his symptoms to a moderate degree.
2. His ability to tolerate stress and pressure of day-to-day employment appears affected by these impairments to a marked degree.
3. His ability to sustain attention and concentration towards the performance of simple, repetitive tasks appears affected by these impairments to a moderate degree.
4. His capacity to respond appropriately to supervisors and coworkers in a work setting appears moderately affected by these impairments.

[Tr. 331-32] In contrast, on November 25, 2015, Dr. Sexton found that Edwards' judgment and insight were intact. [Tr. 315] Dr. Sexton also concluded that Edwards' judgment for

everyday activities, social situations, and abstract reasoning were all within the normal limits. [Tr. 315]

Douglas Back, M.D., reviewed the file in April 2016 and rendered an opinion regarding Edwards' physical abilities. He concluded that Edwards' "physical impairments, either singularly or in combination, [did] not significantly impact his ability to perform one or more basic work activities." [Tr. 84] Dr. Back also found that Edwards could sustain heavy or very heavy work. [Tr. 90]

Lorene Edwards testified during the administrative hearing that Bryan suffered from leg pain due to fibromyalgia, that he spent most of his days moving from the recliner to the bed, and that he could not walk for more than five minutes at a time. [Tr. 41-51] She also contended her husband had stomach pain, albeit less severe than his leg pain. [Tr. 56-57] Lorene Edwards stated that she completed all the household chores. [Tr. 52] Following this testimony, the vocational expert testified that, while the Claimant could not return to his past work, there were other jobs existed in significant numbers that he could perform. [Tr. 61]

On September 11, 2017, ALJ Leiner issued his decision, concluding Bryan Edwards was not disabled during the relevant time period. [Tr. 31] After reviewing the record and considering the testimony presented, the ALJ determined that Edwards had severe impairments of fibromyalgia and affective disorders (20 CFR 404-.1520(c)). [Tr. 24] However, he determined that Edwards did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 25]

The ALJ found that Edwards had the residual functional capacity ("RFC") to perform medium work, subject to the following limitations:

> The claimant could lift 50 pounds occasionally and 25 pounds frequently. He could stand and walk for six hours in an eight-hour workday and could sit for six hours in an eight-hour workday. The claimant regarding mental issues could understand, remember, and carry out simple instructions. He could occasionally understand, remember, and carry out detailed instruction. He could maintain attention and concentration for two-hour periods in an eight-hour workday. He could interact successfully with supervisors and co-workers. He could interact with the general public for one-half of the workday. He could adjust to changes that were gradual, infrequent, and not basic in scope. He [could] perform work with no stringent time targets and no stringent production quotas.

[Tr. 25] The ALJ concluded that the Claimant was unable to return to the performance of his past relevant work. [Tr. 30] However, based on the testimony of the vocational expert, he determined that there were jobs that existed in significant numbers in the national economy that Edwards could have performed, including food prep worker, kitchen helper, or laundry worker. [Tr. 30-31] The ALJ held that Bryan Edwards not under a "disability" from September 22, 2015, to the time of his death on December 13, 2016. [Tr. 30]

### III. STANDARD OF REVIEW

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. §§ 404.1520(e). If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support

the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

IV. LEGAL ANALYSIS

A. The ALJ Did Not Err By Failing To List Pancreatitis And Gerd As Severe Impairments.

Plaintiff claims that the ALJ's erred in not listing pancreatitis and gastroesophageal reflux disease as "severe impairments". [Record No. 13-1, p. 2, 8] An impairment can be considered "not severe" only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89–90 (6th Cir. 1985). An ALJ's failure to consider an impairment "severe" does not constitute reversible error when the ALJ finds that the claimant has other impairments that are severe and continues with the analysis, considering the effects of all of the applicant's conditions. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

While the ALJ did not believe that Edwards' pancreatitis and GERD were "severe," he found other severe impairments and continued with the analysis. [Tr. 26-29] Here, the failure of the ALJ to classify some of the claimant's ailments as "severe" is not reversible error. The ALJ noted three discrete episodes of "acute" pancreatitis, instead of an ongoing ailment. [Tr. 24] Further, he noted multiple doctor's visits during the alleged period of disability where Edwards did not present abdominal complaints or show negative abdominal findings. [Tr. 25, 28, 338, 339, 342, 344, 441] Edwards' pancreatitis was reported to be resolved as of August

2016. [Tr. 27] Edwards did not list pancreatitis as one of the contributing illnesses, injuries, or conditions to his disability in his original application for benefits. [Tr. 65] Additionally, there is no indication that the alleged pancreatitis lasted at least 12 continuous months from the date of onset, as required by 42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. 423(d)(5)(B). *See Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Nettleman v. Comm'r of Soc. Sec.*, 728 F. App'x 473, 474-75 (6th Cir. 2018). In short, Edwards has not shown any functional limitations caused by pancreatitis or GERD that were not accounted for in the RFC.

**B.     The ALJ Properly Weighed The Medical Evidence Of Record And The Testimony Presented During The Administrative Hearing.**

Lorene Edwards asserts that the ALJ failed to give proper weight to her testimony and to the the opinions of the state agency consultants. [Record No. 13-1, p. 2, 9] However, ALJs are not required to defer to such opinions and must only provide a meaningful explanation regarding the weight given to particular medical source opinions. 20 C.F.R. § 404.1527(f)(2)(ii); s*ee Ott v. Comm'r of Soc. Sec.*, No. 1:08-cv-399, 2009 WL 3199064, at *7 (S.D. Ohio Sept. 29. 2009). Such opinions can be given weight only insofar as they are supported by the record. SSR 96-6, 1996 WL 374180, at *2. The ALJ reviewed the evidence of record and explained his reasons for assigning weight to the opinions of particular sources. [Tr. 26-29]

Douglas Back reviewed Bryan Edwards' medical records through April 2016 and concluded that he was capable of performing heavy or very heavy work. [Tr. 90] ALJ Leiner noted that the opinion was "generally consistent with the preponderance of the record evidence," and, to that extent, afforded weight to the opinion. [Tr. 29] Back acknowledged, however, that recent treatment notes indicated that Edwards exhibited abnormal gait and

required a cane to ambulate.  [Tr. 84]  ALJ Leiner reasonably concluded that Back's opinion regarding heavy or very heavy work appeared "somewhat in excess" of the evidence, which Leiner accounted for by assigning Edwards medium work.

The ALJ gave limited weight to the opinion of Dr. Easton Hogg because he did not believe that parts of his opinion were supported by the evidence of record.  [Tr. 29]  He gave weight to Dr. Hogg's finding of a GAF score of 55 and his assessment of moderate limitations.  [Tr. 29; 331]  Dr. Hogg also concluded that Bryan Edwards struggled to tolerate stress and the pressure of day-to-day employment; however, the ALJ found that this conclusion was inconsistent with the record evidence.  [Tr. 29; 331]  The ALJ compared Dr. Hogg's finding to the negative mental status checks performed by Dr. Shawna M. Sexton, D.O., and the lack of mental health treatment history.  [Tr. 29; 295-315]  In contrast to Dr. Hogg, Dr. Sexton found that Bryan Edwards' judgment and insight were intact, judgment for everyday activities, social situations, and abstract reasoning were all within the normal limits.  [Tr. 315]  The ALJ clearly explained which parts of Dr. Hogg's opinion he found credible and consistent with the documentary record.  [Tr. 29]  ALJ Leiner found the assigned GAF score of 55 and Dr. Hogg's assessment of "moderate" limitations in some mental functioning components was generally consistent with the record.  [Tr. 29]

Additionally, "[p]erceptible weight must be given to the testimony of lay witnesses where it is consistent with medical evidence." *Malone v. Comm'r of Soc. Sec.*, 69 F.3d 537, *3 (6th Cir. 1995).  "If lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012).

The ALJ found that Lorene Edwards' testimony was inconsistent with the record and was "persuasive only in part." [Tr. 26-28] ALJ Leiner discussed the Edwards' allegations and gave reasons why the impairments could not have been as severe as alleged. [Tr. 28] He explained that the "documentary record reflects greatly to the contrary that the claimant apart from his three discrete episodes of acute pancreatitis did not report any significant abdominal pains." [Tr. 28] Accordingly, the ALJ did not err in his consideration of this testimony.

> C. **The ALJ Did Not Err In Concluding That Edwards Was Able To Perform Medium Work And That Other Jobs Existed In Significant Numbers That The Claimant Could Have Performed.**

The Claimant contends that the ALJ erred in finding that Bryan Edwards was able to perform medium work and that there were jobs in the national economy that he could hold. [Record No. 13-1, p. 2-3, 6] While it is not reversible error to fail to classify some of the claimant's ailments as "severe," upon the finding of at least one severe impairment, the ALJ must go on to consider the limitations imposed by *all* impairments. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). The relevant inquiry is whether all impairments were considered in determining the claimant's RFC. *Id.*

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Miller v. Comm'r of Soc. Sec.* 811 F.3d 825, 838 (6th Cir. 2016) (citing SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). The ultimate decision of a claimant's RFC is made by the ALJ. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); 20 C.F.R. 404.1546(c). When deciding a claimant's RFC, the ALJ considers "the medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 443 (6th Cir. 2010).

ALJ Leiner considered the entire record, including the testimony of all witnesses, in making his decision regarding Bryan Edwards' RFC. [Tr. 26-29] The ALJ reviewed the testimony of Edwards, his wife, and the state agency consultants in making his RFC determination. [Tr. 26-29] Further, the ALJ considered the documentary record and compared it to the testimony of Edwards, his wife, and opinions of the consultants. [Tr. 26-29] He explicitly discussed Edwards' "severe" ailment, fibromyalgia, in making his RFC decision. [Tr. 26-27] ALJ Leiner also assessed Edwards' pancreatitis in formulating his RFC determination. [Tr. 27-28; *see also Fisk*, 253 F. App'x at 583] The ALJ explained that Edwards' pancreatitis was a discrete illness, instead of an ongoing ailment. [Tr. 24] He then explained the weight assigned to the testimony and evidence in concluding that Edwards could perform medium work. [Tr. 26-29]

### D. The ALJ's Decision That Edwards Was Not Disabled Is Supported By Substantial Evidence.[1]

If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently, *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994), and even if the claimant's position is also supported by substantial evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The decision in this case was supported by the documentary record, the findings of Dr. Douglas Back, and some of the

---

[1] The plaintiff raised several issues in her motion but failed to flesh out any argument. This opinion only addresses the issues developed in the Plaintiff's argument section. [Record No. 13-1, p. 6-9] "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

testimony presented in the case. Further, Plaintiff merely references other areas of the motion and memorandum in claiming that the ALJ's determination was not supported by substantial evidence. However, for the reasons explained in the preceding sections, the ALJ's findings are supported by substantial evidence.

V. CONCLUSION

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendant's motion for summary judgment [Record No. 15] is **GRANTED**.

2. The plaintiff's motion for summary judgment [Record No. 13] is **DENIED**.

3. The Commissioner's decision denying benefits will be **AFFIRMED** by a separate judgment entered this date.

Dated: September 5, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge